## 37697. BROWN *v.* THE STATE.

TOWNSEND, Judge. The exception here is to the judgment denying the motion for new trial on the general grounds. The conviction of the defendant, Sam Brown, in the Superior Court of Walton County for the offense of possessing illegal liquor raises the sole question of whether, such liquor having been found in the house where the defendant and his wife were living, and nothing else connecting the defendant with the liquor, the presumption that the possession of the liquor was that of the defendant as head of the house can be applied so as to authorize conviction where it conclusively appears that for "a short time" prior to the discovery of the liquor the defendant had been incarcerated in jail under a peace warrant. The same question was raised in *Ridley* v. *State*, 93 *Ga. App.* 557 (92 S. E. 2d 308) only by the statement of the defendant to the effect that he had just returned from a trip to Florida, which, as the court pointed out, the jury was not required to accept. It was pointed out in that case that proof that the liquor was found in the home of the accused, he being the head of the house, raises a legal rebuttable presumption of his guilt, proof of which is sufficient to make out a prima facie case. Where, however, the premises are occupied by the defendant with others not members of his immediate family, the presumption does not obtain. See *Harper* v. *State*, 85 *Ga. App.* 252 (69 S. E. 2d 102). Put another way, it might be said that proof that the defendant and others who are not members of his household share the

premises is a fact sufficient to rebut the legal presumption of guilt. It appears in this case that at the time the premises were searched the defendant was in jail, and that the persons present at that time were the defendant's wife and his brother-in-law. The latter was not a member of his household. The testimony of the sheriff in this regard is that the brother-in-law was "visiting there in the house" but it does not appear for what length of time he had been there. Under these circumstances, the evidence is just as consistent with the theory that the whisky was brought to the premises by the brother-in-law or another after the defendant was incarcerated as it is with the theory that it was placed there by the defendant or with his knowledge before he was incarcerated. Evidence which points equally to either of two opposing theories proves neither. *Patrick* v. *State*, 75 *Ga. App.* 687 (2) (44 S. E. 2d 297).

The evidence was insufficient to support the verdict, and the trial court erred in denying the motion for new trial.

*Judgment reversed. Felton, C. J., Carlisle and Nichols, JJ., concur. Gardner, P. J., and Quillian, J., dissent.*

DECIDED JUNE 17, 1959.

*Roberts & Roberts, Orrin Roberts,* for plaintiff in error.

*D. M. Pollock, Solicitor-General,* contra.

GARDNER, Presiding Judge, dissenting: This case originated when the wife of the defendant procured a peace warrant against her husband. At that time they lived in a two-story house with one room only upstairs. When the sheriff went to serve the peace warrant the defendant was not at home. The officer went in search of the defendant and located him down the road a short distance from the house. The defendant was arrested and confined in jail in Walton County, the county of the residence of the defendant, where he remained for a short time, a few days.

At one time when the sheriff was at the home of the defendant the sheriff inquired of the defendant's brother-in-law as to the name of the brother-in-law, which was given to the sheriff, and at the same time he admitted that he was the brother of the defendant's wife.

While the defendant was in jail the sheriff returned to the defendant's house with the proper papers authorizing a search of the defendant's home. At the trial the sheriff stated that he did not make a search of the entire house (the upstairs was not searched) when he went with a warrant for the arrest of the defendant except that he did pull down the screen of a fireplace in the kitchen which appeared to have been pulled back and forth. It appeared that something had been taken out from behind the screen. Upon the return of the sheriff to the home of the defendant he searched the upstairs. The sheriff testified that the whisky was found "in a place about that long (indicating). I saw the plank was, you might say, greasy where it had been handled a lot. I stepped on it and saw that it was loose, so I pulled it up and looked between the sills and there was the whisky. I found seven half-gallons of whisky in the floor. It was untaxed corn whisky. That was the home of Sam Brown and he and his wife lived there." The evidence reveals, and on trial the defendant admitted that his brother-in-law did not live there. He told where the brother-in-law did live.

The indictment which was returned against the defendant was for illegal possession of whisky. At the time of the trial of the case the defendant and his wife were still living at the same place where the whisky was found upstairs. The defendant made the following statement to the court and jury: "I will tell you, on Sunday Mr. Louis, I didn't see him but my brother-in-law was there; he lived out near Grove Spring, they came and made a search; they didn't find anything.

"On Monday my wife came out here and swore out a peace warrant for me. Mr. Louis and Mr. Mitch Young came over and got me out of bed and locked me up.

"On Tuesday evening my wife, sister and brother-in-law came up there and some whisky was placed in the house, then they called Mr. Louis and showed him where it was. It wasn't my whisky, it was put there for a trap. That is exactly the way it happened. I was in jail under a peace warrant. As far as I know, I know it wasn't mine.

"She had it in against me for a long time and it was placed there for a trap.

"I don't sell whisky, some times I drink a little bit."

The jury returned a verdict of "guilty" against the defendant. The defendant made a motion for new trial on the general grounds. This motion was denied and it is to this judgment that the case is here for review.

It is my understanding that this court is not authorized to pass on undisputed facts of a case where the evidence authorizes a conviction and a jury has already so found during a regular trial, and a motion for a new trial has been denied by the trial court. It is elementary that it is the province of a jury to pass on facts of a case. The jury may believe or disbelieve the testimony of any witness or the statement of a defendant.

In the majority opinion our attention is called to the following cases: *Ridley* v. *State,* 93 *Ga. App.* 557 (92 S. E. 2d 308); *Harper* v. *State,* 85 *Ga. App.* 252 (69 S. E. 2d 102); *Patrick* v. *State,* 75 *Ga. App.* 687 (44 S. E. 2d 297). In *Ridley* v. *State,* supra, this court said: "1. On the trial of one accused of the possession of non-tax-paid liquor the presumption that whisky found in a man's house belongs to him is a legal presumption, proof of which is sufficient to make a prima facie case that it was in the possession of the defendant. *Gilder* v. *State,* 52 *Ga. App.* 252 (183 S. E. 95).

"2. It is the prerogative of the jury to accept the defendant's statement as a whole or to reject it as a whole, to believe it in part or to disbelieve it in part. In the exercise of this discretion they are unlimited. *Beatty* v. *State,* 54 *Ga. App.* 280 (187 S. E. 686) and citations." That case was affirmed. It reflects the exact position taken in the dissenting opinion in the instant case and therefore supports the stand taken in this dissenting opinion.

In *Harper* v. *State,* 85 *Ga. App.* 252, supra, the facts were entirely different from the facts of the instant case. In that case there was conflicting testimony. Also, there were several people other than the man and his wife living in the house, including a hired man who stated "That it was his whisky and that he put it there." A reversal was proper in that case, written by Judge Townsend speaking for the court, but no such evidence appears in the case at bar.

In *Patrick* v. *State,* 75 *Ga. App.* 687, supra, there was much conflicting testimony, unlike the case at bar where no conflicting testimony appears.

We are not unmindful of the fact that in the instant case the defendant denied his guilt, but the jury chose not to believe such statement which was the prerogative of the jury here, as in all cases. It follows that none of the cases relied upon in the majority opinion are in conflict with what we are holding in this dissenting opinion.

It is my opinion that the undisputed evidence is entirely sufficient to sustain the verdict and judgment.

I am authorized to say that Quillian, J., concurs with me in this dissent.